UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-01278-AGF |
| | ) | |
| CHICAGO BANCORP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the following motions:  (1) a motion for

judgment on the pleadings by Defendant Chicago Bancorp, Inc., and Defendants Federal

Savings Bank, National Bancorp Holdings, Inc., Stephen Calk, and John Calk (the latter

four, collectively, the "FSB Defendants")[1] (Doc. Nos. 32 & 55); (2) a motion for fees and

costs, pursuant to Federal Rule of Civil Procedure 41(d), by the FSB Defendants (Doc.

No. 50); and (3) a motion for leave to file a first amended complaint by Plaintiff

CitiMortgage, Inc. ("CMI") (Doc. No. 27).  At issue in each of these motions is the effect

on this lawsuit, if any, of another lawsuit filed by CMI in this District, asserting similar

claims against the same Defendants.  For the reasons set forth below, the Court holds that

the other lawsuit neither precludes CMI from asserting its current and proposed claims

against Defendants in this case, nor entitles the FSB Defendants to fees and costs under

---

[1]    The motion for judgment on the pleadings was filed solely by Chicago Bancorp, but
on November 25, 2014, the FSB Defendants filed a "Memorandum to Court" stating that
they "join in and adopt by reference Chicago Bancorp's Motion for Judgment on the
Pleadings[.]"  (Doc. No. 46.)

Rule 41(d).  Therefore, the Court will deny Defendants' motions and will grant CMI's motion for leave to file an amended complaint.

## BACKGROUND

In 2004, CMI and Chicago Bancorp entered into a contract by which CMI would, from time to time, purchase residential mortgage loans from Chicago Bancorp.  The contract consisted of a standard form contract entitled Correspondent Agreement Form 200, a Delegated Underwriting Addendum, and a CMI Select Addendum (collectively, the "Agreement").  The Agreement also incorporated by reference a more detailed CMI Correspondent Manual.  The Agreement required Chicago Bancorp to repurchase its loans if CMI, in its sole discretion, determined the loans violated the terms of the Agreement.

CMI determined that 11 loans sold by Chicago Bancorp failed to comply with the Agreement, and demanded that Chicago Bancorp repurchase the loans.  When Chicago Bancorp failed to do so, CMI filed suit.  That suit, Case No. 4:12-cv-00246 (the "2012 lawsuit"), was filed in this District on February 13, 2012 and heard by Chief Judge Catherine D. Perry.

In the 2012 lawsuit, CMI brought a one-count claim for breach of contract against Chicago Bancorp, alleging in separate paragraphs the specific ways in which each of the 11 loans failed to comply with the Agreement.  Chicago Bancorp moved to require CMI to state its claim with respect to each loan in a separate count, pursuant to Federal Rule of Civil Procedure 10(b), which states that "[i]f doing so would promote clarity, each claim founded on a separate transaction . . . must be stated in a separate count[.]"  Fed. R. Civ.

P. 10(b). Judge Perry denied Chicago Bancorp's motion, finding that "[a]lthough CMI could have separated each loan that allegedly breached the contract into a separate count of breach of contract," it was not required to do so under Rule 10(b) because CMI already separated its allegations with respect to each loan in different paragraphs, and further separation by count was therefore "not necessary for a clear understanding of CMI's claims against Bancorp." *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, No. 4:12CV246 CDP, 2012 WL 1660825, at *2 (E.D. Mo. May 11, 2012).

Judge Perry ultimately granted CMI summary judgment on its breach of contract claims with respect to some, but not all, of the 11 loans at issue. *See CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, No. 4:12 CV 246 CDP, 2014 WL 4415261, at *4 (E.D. Mo. Sept. 8, 2014). To reach this decision, Judge Perry analyzed each loan, including the facts and circumstances underlying CMI's determination that each loan was defective, in order to decide whether CMI exercised its discretion in good faith. *Id.* at *2-3. Judge Perry granted summary judgment in favor of CMI on all but three of the loans. *Id.* CMI later voluntarily dismissed its claims on the remaining three loans, and final judgment was entered in the 2012 lawsuit on January 23, 2015. (Doc. No. 238.)

CMI also sued the FSB Defendants in the 2012 lawsuit. CMI alleged that Defendants Stephen and John Calk, brothers and owners of Chicago Bancorp, unlawfully stripped Chicago Bancorp of its assets and transferred the assets to their other companies, Defendant National Bancorp Holdings and its subsidiary, Defendant Federal Savings Bank, for the purpose of avoiding any judgment awarded to CMI. CMI sued the FSB Defendants on theories of fraudulent transfer, alter ego, and successor liability.

However, CMI later moved to voluntarily dismiss its claims against the FSB Defendants in the 2012 lawsuit. CMI's stated reasons for the dismissal were that Chicago Bancorp promised that it would retain enough assets to pay in full any unfavorable judgment in the 2012 lawsuit, and CMI had brought a second lawsuit regarding a different group of loans in which it would pursue the FSB Defendants. Judge Perry granted CMI's motion. In doing so, she found that CMI's "veil-piercing-type claims" against the FSB Defendants would be more appropriately presented in the second suit, where, if CMI prevailed, there was evidence Chicago Bancorp did not have enough assets to pay a judgment, and the secondary liability of the FSB Defendants would therefore be more central to the dispute. *See* No. 4:12 CV 246 CDP, Doc. No. 233 (E.D. Mo. Nov. 19, 2014).

The second lawsuit described above is this lawsuit. CMI filed this lawsuit on July 21, 2014, again asserting one breach of contract count against Chicago Bancorp (Count I) for failing to repurchase several defective loans, and fraudulent transfer, alter ego, and successor liability claims against the FSB Defendants (Counts II-IV) for unlawfully transferring assets away from Chicago Bancorp to avoid paying an unfavorable judgment in this case. The primary difference between the two lawsuits is the underlying loans at issue. This lawsuit asserts claims with respect to 18 loans, none of which was at issue in the 2012 lawsuit.

On October 17, 2014, CMI moved to amend its complaint in this lawsuit to add claims regarding 36 more loans to Count I, bringing the total loans at issue in Count I to 54. None of these loans was at issue in the 2012 lawsuit. The motion for leave to amend also seeks to add a new count asserting an alternative breach of contract theory with

respect to a subset of the loans at issue in Count I;[2] to incorporate the new count into its alter ego and successor liability claims; and to clarify its jurisdictional allegations.[3]

Defendants move for judgment on the pleadings with respect to all of CMI's claims in this lawsuit. Defendants argue that CMI's claims could and should have been raised in the 2012 lawsuit, and CMI is therefore precluded from asserting its claims in this lawsuit under the doctrine of res judicata and the rule against claim splitting.

For the same reason, Defendants also oppose CMI's motion for leave to amend its complaint. Defendants argue that amendment would be futile because the new claims, too, should have been asserted in the 2012 lawsuit and would likewise be subject to judgment on the pleadings in this case.

Finally, the FSB Defendants move to recover the costs and attorneys' fees they incurred in defending against CMI's claims in the 2012 lawsuit before their dismissal from that case. The FSB Defendants argue that they are entitled to $17,579.00 in costs and fees, pursuant to Federal Rule of Civil Procedure 41(d), for work performed in the 2012 lawsuit that will have to be repeated in this lawsuit. Specifically, the FSB Defendants request the fees incurred in preparing and filing their initial pleadings and

---

[2]    CMI asserts that some of the claims at issue in Count I were asserted after Chicago Bancorp's assets were transferred, and these claims may therefore be barred by certain Illinois statutes governing dissolution of corporations. In the proposed new count, CMI asserts that to the extent any claims in Count I are barred by Illinois law, Chicago Bancorp is nevertheless liable for the full amount of these claims because Chicago Bancorp breached a different obligation in the Agreement, to disclose any change in its financial condition.

[3]    For example, the proposed amended complaint alleges that Defendants Stephen and John Calk are "citizen[s]" of Illinois, rather than merely "resident[s]" of Illinois, for the purpose of diversity jurisdiction. *Compare* Doc. No. 27-1 at 5 *with* Doc. No. 1 at 4.

disclosures in the 2012 lawsuit, in performing various scheduling tasks in the 2012 lawsuit, and in preparing the motion for costs and fees in this lawsuit.

CMI responds that res judicata and claim splitting principles do not apply here because each loan constitutes a separate transaction on which a separate claim may be raised. Therefore, CMI maintains that it is entitled to assert both its current and proposed claims in this lawsuit, notwithstanding that it asserted similar claims in the 2012 lawsuit. For the same reason, CMI argues that the FSB Defendants are not entitled to any costs and fees under Rule 41(d). CMI contends that although it asserts similar veil-piercing claims against the FSB Defendants as it did in the 2012 lawsuit, the claims are not duplicative because they are based on a different set of loans. Moreover, CMI argues that any work performed by the FSB Defendants in the 2012 lawsuit can be reused in this case, and an award of fees is therefore inappropriate under Rule 41(d).

## DISCUSSION

### Judgment on Pleadings

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v. Univ. of Minn.*, 304 F .3d 797, 803 (8th Cir. 2002) (citation omitted). When presented with a motion for judgment on the pleadings, a district court must "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the [plaintiff], drawing all inferences in [his] favor." *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (citation omitted). The standard for judgment on the pleadings is the same as that for failure to state a claim under Rule

12(b)(6) of the Federal Rules of Civil Procedure. *Id.* at 665. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-70 (2007)).

In diversity cases such as this, "federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Welk v. Fed. Nat. Mortgage Ass'n*, 561 F. App'x 577, 579 (8th Cir. 2014) (citing *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008)).

Under Missouri law, "[i]mproper splitting of claims occurs when a party sues on a claim which arises out of the same 'act, contract or transaction' as the previously litigated claims." *Kesterson v. State Farm Fire & Cas. Co.*, 242 S.W.3d 712, 716 (Mo. banc 2008) (citation omitted). This rule is a species of res judicata, or claim preclusion, a common law doctrine that "precludes relitigation of a claim formerly made." *Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo. 2002).

Claim preclusion under Missouri law requires a final judgment on the merits in the first suit. *See Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 612 (Mo. 2006) ("Res judicata prevents a party from relitigating facts or questions that have been settled by judgment on the merits in a previous action."); *Deatherage v. Cleghorn*, 115 S.W.3d 447, 460 (Mo. Ct. App. 2003) ("Respondents could not have raised their defense of res judicata and related doctrines until there was a final judgment resulting from the *first* litigation.") (emphasis in original). When Defendants filed their motion for judgment on the pleadings in this case, a final judgment had not yet been reached in the

2012 lawsuit.  Therefore, claim preclusion could not have applied.

Since then, however, Judge Perry has entered final judgment in the 2012 lawsuit, and Defendants filed an amended motion for judgment on the pleadings in this case, alerting the Court to this fact and arguing that claim preclusion now applies.  (Doc. No. 55.)  Defendants also argue that federal district courts have recognized a distinct claim *splitting*, rather than claim *preclusion*, doctrine that does not require a final judgment, but instead arises out of the inherent discretion of district courts to control their dockets by dismissing duplicative cases.  *See, e.g., Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011) (holding that while "claim splitting and res judicata both serve the same interests of promoting judicial economy," because "claim splitting is more concerned with the district court's comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments," a final judgment is an element of res judicata but is "not a necessary component of claim-splitting analysis").

Regardless of which doctrine the Court applies, in order to prevail on their motion for judgment on the pleadings, Defendants must demonstrate that the 2012 lawsuit and this lawsuit involve the same claim, meaning "[t]here must be the same parties . . . ; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same."  *Katz*, 655 F.3d at 1217 (citation omitted); *see also Kesterson*, 242 S.W.3d at 716 (holding that Missouri's claim preclusion doctrine serves to "prevent a multiplicity of suits and appeals with respect to a single cause of action").

"In general, the test for determining whether a cause of action is single and cannot

be split is: 1) whether separate actions brought arise out of the same act, contract or transaction; 2) or whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions." *Deatherage*, 115 S.W.3d at 455 (citation omitted). In all cases:

> [t]he key question is what is the "thing"—the claim or cause of action—that has previously been litigated? A claim is the aggregate of operative facts giving rise to a right enforceable by a court. The definition of a cause of action is nearly the same: a group of operative facts giving rise to one or more bases for suing. Whether referring to the traditional phrase "cause of action" or the modern terms "claim" and "claim for relief" . . . , the definition centers on "facts" that form or could form the basis of the previous adjudication.

*Chesterfield Village*, 64 S.W.3d at 318 (citations omitted). Thus, to determine whether the claims are the same in both cases, "a court looks to the factual bases for the claims, not the legal theories." *Id.* at 319.

In this case, the legal theories asserted are the same as in the 2012 lawsuit, in that both lawsuits assert breach of contract claims based on the same Agreement. But the factual bases supporting the requests for relief in this case are significantly different from those alleged in the 2012 lawsuit. Specifically, each loan sold from Chicago Bancorp to CMI, and each demand for repurchase made by CMI, presents a unique set of operative facts giving rise to potential relief. Indeed, it is precisely because of these differences that, even within the 2012 lawsuit, CMI's claims arising from some loans were appropriate for summary judgment, but claims arising from other loans were not. As in the 2012 lawsuit, adjudication of the breach of contract claims in this case, as well as the veil-piercing claims to which they are tied, will ultimately require an independent

evaluation of the facts and circumstances surrounding each loan to determine whether, in each case, CMI exercised its discretion to demand repurchase under the Agreement in good faith.

That CMI chose to group certain claims regarding different loans together in the 2012 lawsuit (and in this case) does not mean that CMI must bring all of its claims against Chicago Bancorp in one lawsuit. "[A] plaintiff may join in one suit separate claims against the same defendant," but it "is not required to do so[.]" *Grue v. Hensley*, 357 Mo. 592, 599 (Mo. 1948). Likewise, a plaintiff may join in one suit causes of action that "overlap or possess certain elements in common," but as long as they "differ in essential facts," they will be "considered separate causes of action" and may be raised in separate lawsuits. *Id.*

Because each loan in these cases presents a distinct factual basis giving rise to relief, the Court finds that the 2012 lawsuit does not bar CMI's claims in this case. Therefore, the Court will deny Defendants' motion for judgment on the pleadings.

**Leave to Amend**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), courts should grant leave to amend a pleading "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, leave to amend will be granted unless there are compelling reasons for denial, "such as undue delay, bad faith, or dilatory motive[,] undue prejudice to the non-moving party, or futility of the amendment." *Alternate Fuels, Inc. v. Cabanas*, 538 F.3d 969, 974 (8th Cir. 2008) (citation omitted). Defendants' sole ground for opposing amendment is futility, because the proposed claims would be precluded under the doctrines of res judicata and

claim splitting. The Court rejects this argument, for the reasons stated above. Because the proposed amended complaint, like the current complaint, contains separate claims based on factually distinct loans, claim preclusion and claim splitting doctrines do not apply. Therefore, the Court will grant CMI's motion for leave to amend.

**Attorney's Fees and Costs Pursuant to Rule 41(d)**

Federal Rule of Civil Procedure 41(d) provides that "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action[.]" Fed. R. Civ. P. 41(d). "The award of costs under Rule 41(d) is intended to deter forum shopping and vexatious litigation." *Siepel v. Bank of Am., N.A.*, 239 F.R.D. 558, 563 (E.D. Mo. 2006). The moving party must establish that "(1) a plaintiff's previous action was dismissed; (2) a second action was commenced that is based upon or includes the same claim against the same defendant; and (3) there are costs and attorneys' fees incurred by the defendant in the prior action that will not be useful in the newly-filed litigation." *Id.*

Although the legal theories underlying the claims against the FSB Defendants in this case are the same as in the 2012 lawsuit, the Court cannot say the claims in the two cases are identical. This is because, in both cases, the veil-piercing claims against the FSB Defendants are inherently tied to, and inseparable from, the contract claims against Chicago Bancorp. In other words, the veil-piercing claims necessarily encompass the underlying contract claims, and because the contract claims in the two lawsuits are factually distinct, the veil-piercing claims are distinct as well.

This distinction is apparent when the Court considers the reason why CMI dismissed its claims against the FSB Defendants in the 2012 lawsuit. The 2012 claims were dismissed because the underlying contract claims on which they were based could be satisfied by Chicago Bancorp. Because Chicago Bancorp was not judgment proof in the 2012 lawsuit, the veil-piercing claims against the FSB Defendants were moot. The same is not true in this case, a fact recognized by Judge Perry when she allowed CMI to dismiss its claims in the 2012 lawsuit. The differences between the underlying contract claims in the 2012 lawsuit and this lawsuit, including the amount of damages alleged and Chicago Bancorp's ability to pay, render the veil-piercing claims actionable in this case and also undermine the FSB Defendants' charge that CMI is merely engaged in vexatious forum shopping.

Moreover, any work performed by the FSB Defendants in the 2012 lawsuit will, for the most part, be reusable in this lawsuit. For example, with some small adjustments, the initial pleadings and disclosures filed in the 2012 lawsuit may be reused in this lawsuit. Recovery of fees for this work would be inappropriate under Rule 41(d). *See Kern v. TXO Prod. Corp.*, 738 F.2d 968, 973 (8th Cir. 1984) ("Plaintiff should be required to pay only for those lawyers' services that will have to be repeated if the case is refiled.").[4]

For all of these reasons, the Court declines to award the FSB Defendants any costs or fees under Rule 41(d).

---

[4] Because the Court will exercise its discretion to deny the FSB Defendants' Rule 41(d) motion, the Court need not decide the propriety of the FSB Defendants' additional request for the fees incurred in preparing its motion for fees under Rule 41(d).

## <u>CONCLUSION</u>

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motions for judgment on the pleadings are **DENIED**.  (Doc. Nos. 32 & 55.)

**IT IS FURTHER ORDERED** that CMI's motion for leave to file a first amended complaint is **GRANTED**.  (Doc. No. 27.)  The Clerk of Court shall detach the proposed amended complaint, Doc. No. 27-1, and docket it as Plaintiff's First Amended Complaint.

**IT IS FURTHER ORDERED** that the FSB Defendants' motion for fees and costs pursuant to Rule 41(d) is **DENIED**.  (Doc. No. 50.)


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 12th day of February, 2015.