UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14CV01278 AGF |
| | ) | |
| CHICAGO BANCORP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion (Doc. No. 61) of Defendant Chicago Bancorp, Inc. ("Chicago Bancorp") to revise the Court's Order of February 12, 2015, denying Defendants' motion for judgment on the pleadings, to allow Chicago Bancorp to immediately appeal the interlocutory Order, pursuant to 28 U.S.C. § 1292(b), and on the motion (Doc. No. 60) of Plaintiff CitiMortgage, Inc. ("CMI") for leave to file a second amended complaint. For the following reasons, Chicago Bancorp's motion shall be denied and CMI's motion shall be granted.

## BACKGROUND

The facts are set out in the Court's previous Order and shall not be recounted here in detail. In relevant part, CMI entered into a contract with Chicago Bancorp (hereinafter, the "Agreement"), under which it would, from time to time, purchase residential mortgage loans from Chicago Bancorp. This Agreement required Chicago

Bancorp to repurchase its loans if CMI, in good faith and in its sole discretion, determined that the loans violated the terms of the Agreement.

CMI determined that 11 of these loans were not in compliance with the Agreement and demanded that Chicago Bancorp repurchase them. When Chicago Bancorp refused, CMI filed suit on February 13, 2012, in Case No. 4:12-cv-00246 CDP (the "2012 lawsuit"), claiming breach of contract. The court in the 2012 lawsuit analyzed the facts and circumstances of each loan separately, and ultimately granted summary judgment with respect to some, but not all, of the loans. *See CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, No. 4:12CV246 CDP, 2014 WL 4415261 (E.D. Mo. Sept. 8, 2014).

On July 21, 2014, while the 2012 lawsuit was still active, CMI filed this lawsuit,[1] similarly asserting breach of contract claims against Chicago Bancorp for failing to repurchase 18 loans,[2] none of which was at issue in the 2012 lawsuit. CMI subsequently amended its complaint to add 36 more loans, none of which was at issue in the 2012 lawsuit, bringing the total number of loans at issue in this case to 54.[3]

On October 27, 2014, Chicago Bancorp moved for judgment on the pleadings, asserting that CMI's claims could and should have been raised in the 2012 lawsuit, and

---

[1] This case and the 2012 lawsuit were both filed in federal court as diversity actions pursuant to 28 U.S.C. § 1332(a).

[2] In both the 2012 lawsuit and the instant lawsuit, CMI also raised fraudulent transfer, alter ego, and successor liability claims against the other Defendants in these cases. These claims were described in detail in the Court's Order on February 12, 2015, and will not be reexamined here, as they have no bearing on the outcome of the present motions.

[3] This number is subject to change, as will be discussed below, because CMI has moved to amend its complaint to delete certain loans from, and add others to, its claims against Chicago Bancorp.

that therefore, CMI was precluded from raising them in this lawsuit under the doctrine of res judicata.[4] Chicago Bancorp admitted that each loan and each repurchase demand involved a different set of facts, but contended that because the claims in both lawsuits were for breach of the same Agreement, CMI should have brought them together. It was uncontested that Missouri's claim preclusion rules controlled the question.

On February 12, 2015, the Court denied Chicago Bancorp's motion. The Court found that, although both lawsuits asserted breach of contract claims based on the same Agreement, the factual bases supporting the requests for relief were necessarily different for each loan at issue. Because the distinct factual bases required each repurchase demand to be analyzed separately, the Court held that under Missouri law, claim preclusion did not apply and CMI's claims were not barred by its failure to raise them in the 2012 lawsuit.

In its present motion, Chicago Bancorp asks the Court to amend the February 12 Order to certify it for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Chicago Bancorp argues that the February 12 Order involves a controlling question of law as to the applicability of the doctrine of claim preclusion to this case, and that there is a substantial ground for difference of opinion as to what constitutes a single "claim" under the doctrine.

---

[4] Chicago Bancorp's original motion argued that the rule against claim splitting precluded CMI from bringing its claims in this lawsuit. On January 30, 2015, following the entry of final judgment in the 2012 lawsuit, Chicago Bancorp amended its motion to reflect such, and change its justification for judgment on the pleadings to the doctrine of res judicata. *See* Doc. No. 55.

In response, CMI argues that there is no real ground for difference on this issue, and that the cases cited by Chicago Bancorp are all very different from the facts in this case. CMI also reiterates that the court in the 2012 lawsuit analyzed each loan as a separate claim, granting summary judgment on some but not others. Because each loan must be scrutinized independently, CMI contends that each repurchase demand is "unique" and that the separate demands cannot be considered parts of a single claim.

CMI also moves for leave to file a second amended complaint, altering its claims against Chicago Bancorp by deleting ten of the loans currently included, adding five loans presently not included, and clarifying its allegations regarding certain of the loans. CMI's motion for leave to amend is timely under the Case Management Order. (Doc. No. 52.)

Chicago Bancorp opposes CMI's motion on the sole ground that amending the complaint would be futile, given that the entire case should be barred under the doctrine of claim preclusion, as set forth in Chicago Bancorp's motion to amend the February 12 Order. CMI responds that Chicago Bancorp's response should be properly considered a motion for reconsideration of an interlocutory order under Federal Rule of Civil Procedure 54(b), and that in any event, Chicago Bancorp's arguments fail for the reasons discussed in CMI's opposition brief to Chicago Bancorp's motion to amend.

## DISCUSSION

**Motion to Amend the February 12 Order**

The purpose of 28 U.S.C. § 1292(b) is to provide interlocutory appeal in exceptional cases in order to avoid protracted and expensive litigation. *See Bowden v.*

*Meinberg*, No. 4:12CV1824 JAR, 2014 WL 4802030, at *1 (E.D. Mo. Sept. 23, 2014) (citation omitted). Section 1292(b) requires that "(1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) certification will materially advance the ultimate termination of the litigation." *Union Cnty., Iowa v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008). Courts certify issues for interlocutory appeal only "sparingly and with discrimination." *Graham v. Hubbs Mach. & Mfg., Inc.*, No. 4:14CV419 CEJ, 2014 WL 4930896, at *8 (E.D. Mo. June 16, 2014) (citing *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994)). The moving party "bears the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted." *White*, 43 F.3d at 376. "A lack of precedent directly addressing the issue in dispute does not constitute substantial ground for difference of opinion." *See CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, No. 4:12CV246 CDP, 2014 WL 6607082, at *3 (E.D. Mo. Nov. 19, 2014) (citing *Union Cnty.*, 525 F.3d at 647).

On review, the Court finds that there are indeed several Missouri cases, many of which are cited by Chicago Bancorp, that announce the principle that, "in general," if actions arise out of the "same act, contract, or transaction," the actions are single and cannot be split. *See e.g.*, *Stoops v. Stoops*, 256 S.W.2d 799, 801 (Mo. 1953). But the rule is not a "hard and fast" one. *Id.* Rather, the Court must approach the issue "pragmatically," considering the facts and circumstances of each case. *See King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 502 (Mo. banc 1991).

The Court finds that the facts and circumstances of this case distinguish it from each of the cases cited by Chicago Bancorp, and demonstrate that claim preclusion does not apply. The cases cited by Chicago Bancorp are ones in which multiple suits were filed regarding the same transaction or property, or which arose out of a single obligation payable over time in multiple installments. *See, e.g.*, *Chesterfield Vill., Inc. v. City of Chesterfield*, 64 S.W.3d 315, 320-21 (Mo. banc 2002) (finding that a suit for injunctive and declaratory relief regarding the zoning of a piece of property precluded a later suit requesting damages for the improper zoning of the same piece of property); *See v. See*, 242 S.W. 949, 951-52 (Mo. 1922) (finding that a landlord-tenant suit for unpaid rent precluded a second suit for unpaid rent on the same piece of property, by the same tenant, but during a different period, where the plaintiff was aware of both at the time he initiated the first action); *Gooldy v. Lavender*, 16 S.W.2d 681, 682-83 (Mo. App. 1929) (finding that a probate suit to recover the value of services owed by the decedent barred a second suit to recover value for different services rendered, as both were part of a single billing account and should have been brought together).

None of those cases involves, as here, multiple independent transactions governed by a single master contract. When a plaintiff sues over a defendant's multiple failures to pay installments, as under a rent agreement for example, the breaches arise out of the same transaction and are portions of the same obligation, distinguishable only by the date on which they became due. In such a case, it is rational for a court to treat the installments as a single running account and require the plaintiff to bring his claims for all breaches which have occurred up to that point in a single suit. *See, e.g.*, Restatement

(Second) of Judgments § 24, *comment d* (1982) ("When a number of items are overdue on a running account between two persons, and the creditor, bringing an action on the account, fails to include one among several past due items, judgment for or against the creditor precludes a further action by him to recover the omitted item. This conforms to ordinary commercial understanding and convenience.").

However, treating multiple payments due as a single "claim" is far different from doing so with the multiple distinct transactions contemplated by the Agreement in this case. Each loan CMI purchases is unique; CMI reviews each loan it purchases separately; it makes repurchase demands of Chicago Bancorp on a loan-by-loan basis; and when determining whether CMI's demands were made in good faith, the Court must analyze each loan individually. Consequently, the outcome of each alleged breach primarily turns not on the underlying Agreement, but on the facts and circumstances underlying a particular loan. *Compare* the 2012 lawsuit, Case No. 4:12CV246 CDP, Doc. No. 203 at 25-26 (denying CMI's motion for summary judgment as to the "Gelatka loan" because CMI failed to produce evidence of Gelatka's debt-to-income ratio, on which it allegedly based its decision to demand repurchase), *with id.* at 27-28 (granting CMI's motion for summary judgment on the "Hansen loan" because CMI's failure to ask Hansen for updated employment information did not constitute bad faith by CMI in demanding that Chicago Bancorp repurchase that loan).[5]

---

5   This order was vacated in part as to summary judgment on a different loan. *See* Case No. 4:12CV246 CDP, Doc. No. 219.

A review of the purpose and policy concerns underlying the doctrine of claim preclusion supports this distinction. The Supreme Court has observed that res judicata "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party . . . and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). Viewing this case pragmatically, forcing CMI to bring all of its breach of contract claims in the same lawsuit would not serve either of these goals, and indeed, may run afoul of the central purpose of claim preclusion. *See King Gen. Contractors, Inc.*, 821 S.W.2d at 502 (holding that courts must "pragmatically" determine what "factual grouping" constitutes a single transaction for the purposes of res judicata) (quoting the Restatement (Second) of Judgments § 24 (1982)).

As previously noted, each loan under the Agreement is factually independent, which required the court in the 2012 lawsuit to scrutinize each of CMI's claims separately. This was so because the issues are *not* identical in each case, but vary from loan to loan. As of one year ago, CMI had purchased "more than 4,790 loans" from Chicago Bancorp under the Agreement, and given the open-ended nature of the Agreement, the Court does not doubt that many more have accrued, and will continue to do so. *See* the 2012 lawsuit, Case No. 4:12CV246 CDP, Doc. No. 203 at 5 (vacated in part as to summary judgment on one loan). If CMI brought breach of contract claims over hundreds of these loans together—not an unlikely figure given the volume of transactions under the Agreement—the resulting case would be nearly impossible to coordinate at trial, and might necessitate the trial court's splitting the action into smaller

cases easier for a jury to manage. At best this would be no different than the present situation, and at worst it might prove far more inefficient and a greater waste of judicial resources than CMI's approach. In either case, a second suit over different loans from those at issue in the first suit does not constitute needless litigation. Thus, allowing CMI to bring smaller groups of these claims at once aligns with the "dual purposes" of res judicata by not forcing Chicago Bancorp to relitigate identical issues, and because it appears to be the most economical use of judicial resources.

Ultimately, claim preclusion bars litigation of matters which have been litigated previously or which are so closely related that they should have been litigated previously. *See King Gen. Contractors, Inc.*, 821 S.W.2d at 501. The central question becomes: what is the "thing" which was previously litigated? *Chesterfield Vill., Inc.*, 64 S.W.3d at 318. In the February 12 Order, the Court determined that those "things" were various repurchase demands on separate loans, each of which had distinct operative facts and required different evidence to support the respective claim. *See* Doc. No. 57 at 9-10. Where two related suits are over different "things," claim preclusion does not apply. *See Palmore v. City of Pacific*, 393 S.W.3d 657, 665 (Mo. App. 2013) ("Res judicata adheres where 'four identities' are met: *(1) identity of the thing sued for;* (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made.") (emphasis added).

Thus, though each of the loan transactions was governed by the same umbrella Agreement, the loans are sufficiently independent and factually distinct to constitute separate causes of action which need not be joined under Missouri's rules for claim

preclusion. *See Grue v. Hensley*, 210 S.W.2d 7, 11 (Mo. 1948) (holding that when a plaintiff has separate claims under a single continuing contract, those claims must be brought together "unless they be of such independent nature as to constitute separate and distinct causes of action"). The lack of precedent directly analogous to the facts of this lawsuit does not constitute a substantial ground for difference of opinion, as is necessary for certification under § 1292(b). Therefore, the Court will deny Chicago Bancorp's motion to amend the February 12 Order.

**Motion to File a Second Amended Complaint**

Federal Rule of Civil Procedure 15(a)(2) states that courts should grant leave to amend a pleading "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts will grant leave to amend "unless there are compelling reasons such as undue delay, bad faith, or dilatory motive[,] undue prejudice to the non-moving party, or futility of the amendment." *Alternate Fuels, Inc. v. Cabanas*, 538 F.3d 969, 974 (8th Cir. 2008) (citation omitted).

The sole reason that Chicago Bancorp opposes amendment is its contention that amendment would be futile because the claims should be barred under the doctrine of claim preclusion. For the reasons stated above, the Court rejects this argument. Because the proposed amended complaint, like the current complaint, contains separate claims based on factually-distinct loans, the claim preclusion doctrine does not apply. Therefore, the Court will grant CMI's motion for leave to amend.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Defendant Chicago Bancorp, Inc. to amend the Court's Order of February 12, 2015, pursuant to 28 U.S.C. § 1292(b), is **DENIED**. (Doc. No. 61.)

**IT IS FURTHER ORDERED** that the motion of Plaintiff CitiMortgage, Inc. for leave to file a second amended complaint is **GRANTED**. (Doc. No. 60.) The Clerk of the Court shall detach the proposed amended complaint, Doc. No. 60-1, and docket it as Plaintiff's Second Amended Complaint.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March, 2015.