UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CITIMORTGAGE, INC.,                    )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )          Case No. 4:14CV01278 AGF
                                        )
CHICAGO BANCORP, INC., et al.,          )
                                        )
          Defendants.                   )

## MEMORANDUM AND ORDER

This matter is before the Court on the cross motions for summary judgment filed

by Plaintiff CitiMortgage, Inc. ("CMI") and Defendant Chicago Bancorp, Inc. ("Chicago

Bancorp"), and CMI's motion to exclude the expert report and testimony of Chicago

Bancorp's proffered expert, James Deitch.  CMI seeks summary judgment solely on

Count I of its Third Amended Complaint, which claims that Chicago Bancorp breached

the parties' contract for the sale of residential mortgage loans by failing to cure or

repurchase several defective loans.  (Doc. No. 235.)  CMI also seeks to exclude the

expert report and testimony of Deitch, whose opinion Chicago Bancorp has offered in

support of one of its defenses to Count I.  (Doc. No. 151.)

Chicago Bancorp seeks summary judgment on all of CMI's claims against it:

Count I; Count II, claiming that Chicago Bancorp breached the parties' contract by

failing to notify CMI that it was going out of business; and Count III, claiming that

Chicago Bancorp engaged in fraudulent transfers to prevent CMI from recovering on its

repurchase claims.  (Doc. No. 236.)  For the following reasons, CMI's motion for

summary judgment will be granted in part, Chicago Bancorp's motion will be denied, and CMI's motion to exclude the expert report and testimony of Deitch will be denied as moot.

## BACKGROUND

CMI and Chicago Bancorp entered CMI's standard Correspondent Agreement Form 200 ("Agreement") on April 12, 2004. Under the Agreement, CMI purchased residential mortgage loans from Chicago Bancorp and resold some of these loans to the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and other investors in the secondary mortgage market. The Agreement set forth the terms and conditions governing Chicago Bancorp's sale of loans to CMI, and it expressly incorporated a more detailed document containing guidelines and processing requirements known as the "CMI Manual." The Agreement contained a Missouri choice-of-law provision.

### Challenged Loans

The Agreement gave CMI the right to require Chicago Bancorp to cure or correct any loan that CMI, in its sole and exclusive discretion, determined was defective in one of a number of ways. If Chicago Bancorp was unable to do so, CMI could demand repurchase. Specifically, Section 11 of the Agreement, titled "CURE OR REPURCHASE," provided, in relevant part:

> If CMI, in its sole and exclusive discretion, determines that any Loan purchased pursuant to this Agreement:
>
> (i)        was underwritten and/or originated in violation of any term, condition, requirement or procedure contained in this Agreement

or the CMI Manual in effect as of the date CMI purchased such Loan;

(ii)        was underwritten and/or originated based on any materially inaccurate information or material misrepresentation made by the Loan borrower(s) [or Chicago Bancorp];

(iii)        was or is capable of being rescinded by the applicable borrower(s) pursuant to [federal or state law];

(iv)        must be repurchased by any secondary market investor . . . due to a breach by [Chicago Bancorp] of any representation, warranty or covenant contained in this Agreement or the CMI Manual or a failure by [Chicago Bancorp] to comply in all material respects with the applicable CMI Manual terms, conditions, requirements and procedures; and/or

(v)        was subject to a . . . payment related defect (as defined in the CMI Manual)

[Chicago Bancorp] will, upon notification by CMI, correct or cure such defect within the time prescribed by CMI to the full and complete satisfaction of CMI. If, after receiving such notice from CMI, [Chicago Bancorp] is unable to correct or cure such defect within the prescribed time, [Chicago Bancorp] shall, at CMI's sole discretion, either (i) repurchase such defective Loan from CMI at the price required by CMI ("Repurchase Price") or (ii) agree to such other remedies (including but not limited to additional indemnification and/or refund of a portion of the Loan purchase price) as CMI may deem appropriate.

(Doc. No. 253-3 at 6.)   Under section 2301 (the glossary) of the CMI Manual, the

"Repurchase Price" is defined as:

[T]he sum of (i) the current principal balance on the loan as of the paid-to date; (ii) the accrued interest calculated at the mortgage loan Note rate from the mortgage loan paid-to date up to and including the repurchase date; (iii) all unreimbursed advances (including but not limited to tax and insurance advances, delinquency and/or foreclosure expenses, etc.) incurred in connection with the servicing of the mortgage loan; (iv) any price paid in excess of par by CitiMortgage on the funding date; and (v) any other fees, costs, or expenses charged by or paid to another investor in connection with the repurchase of the mortgage loan from such investor but only to the

extent such fees, costs and expenses exceed the total of items (i) through (iv) above.

(Doc. No. 253-10 at 8.)

Aside from Section 11, Section 2 of the Agreement also set forth a list of enumerated "REPRESENTATIONS AND WARRANTIES" by Chicago Bancorp, including representations and warranties that Chicago Bancorp would "fully comply" with the Agreement, and that each loan "shall be fully enforceable and originated in accordance with" the Agreement and the CMI Manual.  (Doc. No. 253-3 at 3.)

Forty-seven of the loans Chicago Bancorp sold to CMI under the Agreement are at issue in Count I of this lawsuit.  CMI determined that these 47 loans were underwritten and/or originated based on materially inaccurate information or material misrepresentations, or were otherwise defective under Section 11.

With respect to 37 of these loans, which were cited by a secondary investor as defective, CMI sent Chicago Bancorp a Citing Notification Letter, in which CMI advised Chicago Bancorp of the defect and explicitly provided Chicago Bancorp the "opportunity to investigate the loan discrepancies" and to provide a written response with any supporting documentation on or before 30 days from the date of the notification. Receiving no timely response from Chicago Bancorp, CMI then followed up with Initial Repurchase Letters, again providing notice of the loan defect; stating that due to the nature of the defect, "repurchase [was] required" under Section 11; and asking Chicago Bancorp to "confirm the repurchase date" on or before 30 days from the date of the letter. The Initial Repurchase Letters did not ask Chicago Bancorp to investigate or respond to

the defect, aside from confirming a repurchase date. Again receiving no timely response from Chicago Bancorp, CMI issued Final Repurchase Letters, stating that CMI had not received a response from Chicago Bancorp; that repurchase was now required; that confirmation of repurchase must be received on or before 30 days from the date of the letter; and that if Chicago Bancorp failed to confirm repurchase within that time, CMI would pursue its options for breach of the Agreement.

With respect to the remaining 10 loans—the Alvarez, Bastos, Capsay, Fox, Groetsch, Gubenko, Korpan, Misquez, Navarro, and Teneyck loans[1]—CMI did not send a Citing Notification Letter. Rather, Chicago Bancorp asserts that the first contact it received from CMI regarding a defect in these 10 loans was an Initial Repurchase Letter, which as described above, provided notice of the defect and demanded repurchase but did not invite an opportunity to investigate or prescribe a time for Chicago Bancorp to respond, except to confirm the repurchase date. Upon receiving no timely response from Chicago Bancorp, CMI followed up with Final Repurchase Letters similar to the ones described above.

Chicago Bancorp did not respond to any of these letters, did not cure or correct the defects in any of the 47 loans, and to date, has not repurchased any of the loans.

**Chicago Bancorp's Dissolution**

In Section 2 of the Agreement, Chicago Bancorp represented and warranted it would "maintain in good standing throughout the term of the Agreement" all licenses and registrations necessary for loan origination, purchase, and sale activities under the

---

[1] These 10 loans were not resold by CMI to a secondary investor.

Agreement, and that Chicago Bancorp would "immediately notify CMI" if it failed to maintain such licenses or registrations; if it or any of its principal directors or owners "has incurred or is likely to incur a material, adverse change in its/their financial condition"; or if there was "any material change in [its] ownership and/or management." (Doc. No. 253-3 at 3-4.)

Section 13 of the Agreement, entitled "NOTICE," stated that "[a]ll notices to CMI shall be sent in accordance with the applicable provisions of the CMI Manual and shall be addressed according to such provisions." *Id.* at 7. The CMI Manual, in turn, stated that "[a]ll notices, demands, and other communications from [Chicago Bancorp] to [CMI] shall be provided in the manner, and to the addresses and telephone numbers provided in the Department Information section of this Chapter." (Doc. No. 253-4 at 3.)

Chicago Bancorp alleges that during a reception at a business conference in October 2012, Stephen and John Calk, the two principals of Chicago Bancorp, verbally told several people at CMI, including Carol Toren, the head of correspondent lending at CMI, that Chicago Bancorp was going out of business.

Chicago Bancorp was voluntarily dissolved on January 4, 2013. CMI alleges that Chicago Bancorp knew it would be shutting down in 2012, but that it never provided CMI contractual notice of its change in financial condition or its plans to dissolve. CMI also alleges that Chicago Bancorp fraudulently transferred its assets to preclude CMI from recovering on its repurchase claims. CMI alleges that, had it received contractual notice of Chicago Bancorp's material changes in financial condition in 2012, it would

have sought provisional relief to block the transfer of assets and dissolution of Chicago Bancorp, in order to preserve recovery on its repurchase claims.

**ARGUMENTS OF THE PARTIES**

**Count I (Breach of Contract for Failure to Repurchase)**

CMI argues that it is entitled to summary judgment on Count I because Chicago Bancorp failed to repurchase the 47 loans as required by the Agreement. CMI asserts that repurchase was required under the Agreement because Chicago Bancorp failed to correct or cure the loan defects upon notification. CMI seeks damages in the amount of the "Repurchase Price" for the loans as that price is calculated in the Agreement. CMI has calculated the Repurchase Price of each of the 47 loans in its statement of uncontroverted material facts in support of its motion, and Chicago Bancorp has not specifically controverted these amounts. *See* Doc. No. 302-1 at 41-56. CMI has calculated the total Repurchase Price of all 47 loans to be $9,427,114.81.

Chicago Bancorp opposes CMI's motion for summary judgment on Count I on three grounds. First, Chicago Bancorp asserts that Count I is time-barred. Chicago Bancorp argues that CMI's contract claim in Count I is subject to the five-year statute of limitations for actions on contracts prescribed in Mo. Rev. Stat. § 516.120, and that the claim began to accrue immediately upon CMI's purchase of each defective loan. Chicago Bancorp asserts that it was the initial sale of each defective loan to CMI—and not Chicago Bancorp's subsequent failure to cure or repurchase the loan—that constituted the breach. Chicago Bancorp maintains that Section 11's "cure or repurchase" provision is merely a remedy provision and does not set forth an independent

-7-

contractual obligation. Because more than five years elapsed between CMI's purchase of each loan and the date on which CMI sued Chicago Bancorp regarding the loan, Chicago Bancorp asserts that CMI's claim is time-barred.

Second, Chicago Bancorp argues that CMI's motion should be denied with respect to the 10 loans which CMI allegedly failed to afford Chicago Bancorp an opportunity to cure or correct before demanding repurchase. Chicago Bancorp asserts that there is a genuine issue of material fact regarding whether CMI's failure to afford an opportunity to cure these 10 loans violated the implied covenant of good faith and fair dealing. Chicago Bancorp does not dispute that it was provided an opportunity to cure or correct the remaining 37 loans.

Finally, Chicago Bancorp contends that CMI's motion should be denied because CMI violated the implied covenant of good faith and fair dealing in determining that the underlying loans were defective. Specifically, Chicago Bancorp argues that there is evidence that CMI based repurchase demands on claimed loan defects that CMI knew were non-existent or that CMI contributed to or caused. In support of one of these bad-faith arguments—that CMI in bad faith claimed that borrower income misrepresentations rendered certain so-called "stated income" loans defective—Chicago Bancorp has offered the testimony of its proffered expert, Deitch. CMI has separately moved to exclude the expert report and testimony of Deitch.

Chicago Bancorp has also filed its own motion for summary judgment on Count I, based solely on its statute of limitations defense.

In response to Chicago Bancorp's statute-of-limitations defense, CMI asserts that Section 11's cure-or-repurchase provision is not merely a remedy but an independent contractual obligation to cure or repurchase loans that CMI, in its sole and exclusive discretion, has found defective for enumerated reasons, and that a claim under Section 11 does not accrue until Chicago Bancorp fails to cure or repurchase such a defective loan. CMI notes that it undisputedly filed its repurchase claim with respect to each loan at issue in Count I within five years from the date on which Chicago Bancorp failed to cure or repurchase the defective loan. CMI argues that Count I is therefore timely. Alternatively, CMI argues that Missouri's longer ten-year statute of limitations for actions upon a writing for the payment of money, prescribed in Mo. Rev. Stat. § 516.110, should apply here instead of the general five-year statute of limitations for actions upon contracts.

With respect to the 10 loans which Chicago Bancorp argues that it was given no opportunity to cure, CMI contends that this argument is precluded by Chicago Bancorp's failure to disclose it in response to CMI's interrogatories asking for all facts supporting Chicago Bancorp's affirmative defenses, and that in any event, the argument fails because the Agreement does not require a specific written opportunity to cure apart from CMI's notice of loan defect determination.

In response to Chicago Bancorp's remaining bad-faith defenses, CMI argues that these defenses are precluded by the Eighth Circuit's decision in a prior lawsuit between the parties, *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, 808 F.3d 747 (8th Cir. 2015) ("*Chicago Bancorp I*").

## Count II (Breach of Contract for Failure to Notify of Plans to Dissolve)

Chicago Bancorp seeks summary judgment on Count II, in which CMI alleges that Chicago Bancorp breached Section 2 of the Agreement by failing to notify CMI that it was likely to incur a material, adverse change in its financial condition, and by failing to notify CMI of its change in ownership or management. Chicago Bancorp contends that the uncontroverted evidence shows that Chicago Bancorp did verbally inform CMI representatives in October 2012 that it planned to go out of business. In any event, Chicago Bancorp asserts that CMI suffered no damage from any breach of the notification requirement because, notwithstanding Chicago Bancorp's dissolution, CMI was still able to recover on other loans in *Chicago Bancorp I* and because CMI cannot recover any more in this lawsuit in light of the statute-of-limitations issue discussed above.

CMI responds that the "cocktail chatter" relied on by Chicago Bancorp does not constitute the formal, contractual notice required under the Agreement and the CMI Manual, and that Chicago Bancorp has offered no evidence that it provided such contractual notice of its plans for dissolution. CMI also contends that Chicago Bancorp's damages challenge is misplaced because CMI's recovery in *Chicago Bancorp I* is irrelevant to its damages in this case, which relate to different loans, and because its claim with respect to the loans in this case is timely.

The only argument Chicago Bancorp reasserts in its reply regarding Count II is its statute-of-limitations defense.

**Count III (Fraudulent Transfer)**

Chicago Bancorp also seeks summary judgment on Count III, in which CMI alleges that Chicago Bancorp fraudulently transferred assets in violation of the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. §§ 428.005, et seq.  Chicago Bancorp argues that a prerequisite to recovery under the Fraudulent Transfer Act is an underlying claim, the collection of which was hindered by the fraudulent transfer.  Chicago Bancorp contends that because the underlying claim here—Count I—is time-barred, CMI has no cause of action under the Fraudulent Transfer Act as a matter of law.

## DISCUSSION

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'"  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Courts must view facts in the light most favorable to the non-moving party and resolve all doubts against the moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## Count I (Breach of Contract for Failure to Repurchase)

In light of the parties' freely bargained-for agreement, which gives CMI the sole and exclusive right to determine whether a loan was defective under the Agreement and to demand repurchase for Chicago Bancorp's failure to cure such defect, the Court finds that CMI may prevail on Count I with respect to all loans for which it provided notification that the loan was defective and an opportunity to cure, and which Chicago Bancorp thereafter failed to cure or repurchase. This same provision between these two parties was addressed recently by the Eighth Circuit in *Chicago Bancorp I*. There, the Eighth Circuit affirmed summary judgment in CMI's favor with respect to different loans under Section 11 of the Agreement. 808 F.3d at 755. The Eighth Circuit noted that "CMI and Bancorp, two sophisticated business entities, voluntarily negotiated and entered into the agreement," and that there was "nothing ambiguous about the language used therein." *Id.* at 752. Under the plain language of the Agreement, the Eighth Circuit found, "Bancorp was required to cure or repurchase a loan if CMI, in its sole and exclusive discretion, determined that any loan was [defective]." *Id.* at 754. The Eighth Circuit held that it was not proper to engage in a loan-by-loan review of CMI's defectiveness determinations and that summary judgment should be granted in CMI's favor where "CMI determined that [the] loans were defective under the terms of the [A]greement[,] CMI forwarded notice of its determination to Bancorp, demanding that Bancorp cure or repurchase the defective loans[, and] [w]hen Bancorp refused, CMI filed suit to recover the repurchase price, as set forth in the [A]greement." *Id.* at 750. As discussed below, the Court finds that CMI has made this showing with respect to all but

10 of the loans at issue in Count I, and the Court further finds that Chicago Bancorp's statute-of-limitations and bad-faith defenses are without merit as a matter of law. Therefore, the Court will grant summary judgment in CMI's favor with respect to 37 out of the 47 loans at issue.

### i. <u>Opportunity to Cure</u>

With respect to the 10 loans which Chicago Bancorp argues that it was given no opportunity to cure, the Court will deny CMI's motion for summary judgment.

Although Chicago Bancorp frames its opportunity-to-cure argument in terms of a "bad faith" affirmative defense, the argument is more appropriately characterized as an attack on CMI's prima facie contract claim. As such, Chicago Bancorp need not have disclosed the argument in response to CMI's interrogatory regarding Chicago Bancorp's affirmative defenses.

Section 11 makes clear that notice with a specified time for cure is required to trigger Chicago Bancorp's repurchase obligation. Section 11 states that Chicago Bancorp must repurchase a loan only if, "upon notification by CMI" and "within the time prescribed by CMI," Chicago Bancorp is unable to cure or correct the loan defect. Likewise, CMI admits that Section 11's repurchase obligation "arises only after: 1) CMI has determined, in its sole and exclusive discretion, the existence of a loan defect; 2) CMI has given notice of its loan defect determination *and afforded Correspondent the opportunity to correct or cure the defect*; 3) Correspondent fails to correct or cure; and 4) CMI makes a repurchase demand." (Doc. No. 304 at 9, emphasis added.)

Although CMI asserts that its Initial Repurchase Letters regarding the 10 loans at issue impliedly afforded Chicago Bancorp an opportunity to cure the defects, these letters neither asked Chicago Bancorp to investigate or cure the defect, nor prescribed a time for such cure.  Rather, the Initial Repurchase Letters only informed Chicago Bancorp of the defects and prescribed a time for Chicago Bancorp to "confirm the repurchase date."[2]  On these facts, the Court cannot say as a matter of law that Chicago Bancorp's repurchase obligation was triggered and breached with respect to the 10 loans.[3]  *See Southland Metals, Inc. v. Am. Castings, LLC*, 800 F.3d 452, 460 (8th Cir. 2015) (holding, under Oklahoma law, that a "jury could find [the defendant] did not comply with the cure provision" of the parties' contract by sending a letter to the plaintiff that notified the plaintiff of a believed breach but that did not discuss a cure);  *State ex rel. Nixon v. Prudential Health Care Plan, Inc.*, No. 4:00CV8 ERW, 2000 WL 33952262, at *4 (E.D. Mo. June 28, 2000) (holding, under Missouri law, that "notice and opportunity to cure requirements expressly set forth in a contract may [not] be avoided by a showing that the breaching party had informal knowledge of the complaining party's allegation of a failure to meet the terms of the contract and chances to improve.").

---

[2]  By contrast, with respect to the other 37 loans for which Chicago Bancorp has admitted that it received an opportunity to cure, CMI first sent Citing Notification Letters explicitly providing Chicago Bancorp the "opportunity to investigate the loan discrepancies" and specifying a period of 30 days within which Chicago Bancorp could provide a written response with any supporting documentation.

[3]  Chicago Bancorp has not moved for summary judgment in its favor on this ground.

CMI also points the Court to a case interpreting New York law, which held that cure provisions may be subject to a "futility exception" whereby no opportunity to cure need be given if the defect is incurable. *See Annecca Inc. v. Lexent, Inc*., 307 F. Supp. 2d 999, 1010 (N.D. Ill. 2004) (interpreting New York law). But even if this exception were recognized under Missouri law (a proposition that CMI has not asserted and for which CMI has not provided authority), it would be given "narrow scope" to "avoid the functional elimination of [the explicit] cure provision from the contract." *Id.* The Court cannot say as a matter of law, based on the record before it, that the defects noted by CMI in the 10 loans at issue were incurable. Therefore, the Court will deny CMI's motion for summary judgment as to these 10 loans.

**ii.     Statute of Limitations**

With respect Chicago Bancorp's statute-of-limitations defense, the Court agrees with CMI that Section 11's cure-or-repurchase provision is not merely a remedy but an independent contractual obligation to cure or repurchase loans that CMI, in its sole and exclusive discretion, has found defective for enumerated reasons. A claim for breach of that contractual obligation does not accrue until Chicago Bancorp, after receiving notice and an opportunity to cure, fails to cure or repurchase the defective loan. Because Chicago Bancorp does not dispute that CMI's repurchase claim with respect to the remaining 37 loans was filed within five years from Chicago Bancorp's failure to cure or

repurchase the loans, the Court rejects Chicago Bancorp's statute-of-limitations defense as a matter of law. [4]

Chicago Bancorp relies on a string of mortgage loan repurchase cases interpreting New York law for its theory that Section 11's cure-or-repurchase provision is merely a remedy for a breach consisting of the sale of a defective loan under other terms of the Agreement. However, the contracts at issue in these cases did not contain a provision like Section 11, granting the purchaser the "sole and exclusive discretion" to determine whether a loan was defective so as to require cure or repurchase. Rather, the repurchase provisions in these cases stated only that they were a "remedy" for breach of representations and warranties contained in a separate section of the contract that were breached, if at all, on the date the non-complying loan was purchased. *See, e.g., ACE Sec. Corp. v. DB Structured Products, Inc.*, 25 N.Y.3d 581, 594-95, 36 N.E.3d 623 (2015) (finding that "[a]lthough parties may contractually agree to undertake a separate obligation, the breach of which does not arise until some future date, the repurchase obligation undertaken by DBSP does not fit this description" because "[i]t was dependent on, and indeed derivative of, DBSP's representations and warranties, which did not survive the closing and were breached, if at all, on that date"); *Bank of New York Mellon v. WMC Mortg.*, LLC, 17 N.Y.S.3d 613, 615 (N.Y. Sup. Ct. 2015) (noting that the

---

[4]    Because the Court finds that Count I is timely under the five-year statute of limitations for actions upon contracts, Mo. Rev. Stat. § 516.120, the Court need not reach CMI's alternative argument that the ten-year statute of limitations for actions upon a writing for the payment of money, Mo. Rev. Stat. § 516.110, should apply here.

repurchase provision in the parties' contract, titled "Remedies for Breach of Representations and Warranties," was the remedy for a breach of representations and warranties set out in a separate contractual provision, and therefore, as in *ACE*, the claim accrued at the time of the breach of representations and warranties). In these cases, the only cause of action was for a breach of representation or warranty, and the remedy for such a breach was limited to repurchase. *See, e.g., ACE*, 25 N.Y.3d at 598; *Bank of New York Mellon*, 17 N.Y.S.3d at 617. Therefore, the courts held that "the cure or repurchase obligation was not an independently enforceable right" but was merely "a procedural prerequisite" to filing suit for breach of a representation or warranty. *ACE*, 25 N.Y.3d at 599; *see also Bank of New York Mellon*, 17 N.Y.S.3d at 617 (similarly finding that the cure or repurchase provision in that case was merely a "procedural condition precedent").

By contrast, Section 11 sets forth an independent obligation that is not dependent upon or derivative of, for instance, Section 2's representations and warranties. Section 11's cure-or-repurchase provision provides CMI the sole and exclusive discretion to declare one or more of the listed defects and to demand cure or repurchase, separate and apart from Chicago Bancorp's representations and warranties in other sections of the Agreement. The Eighth Circuit, interpreting both Missouri law and comparable Minnesota law, has suggested that cure-or-repurchase provisions akin to Section 11 are not merely procedural prerequisites but independent and continuing contractual obligations, the breach of which occurs upon the seller's failure to cure or repurchase.

For example, *Residential Funding Co., LLC v. Terrace Mortgage Co.* involved a repurchase provision similar to Section 11, which gave the purchaser the "sole

discretion" to determine whether an event of default occurred and to demand repurchase. *Residential Funding Co., LLC v. Terrace Mortgage Co.*, 725 F.3d 910, 916 (8th Cir. 2013). In that case, as here, the defendant argued that the repurchase provision was merely a procedural "condition precedent" and that the real claim to be resolved by the court was whether an underlying default occurred. *Id.* at 916-17. The Eighth Circuit explicitly rejected the defendant's argument. *Id.* Although the case did not involve a statute-of-limitations defense, the Eighth Circuit recognized that the repurchase provision gave rise to an independent claim, separate and apart from a claim based on the underlying default. *Id.* In such a repurchase claim, the court's review was limited to whether the purchaser notified the seller of the event of default, thereby obligating repurchase, and whether the seller refused to honor its repurchase obligation, thereby breaching the parties' contract. *Id.* Likewise, in *Chicago Bancorp I*, the Eighth Circuit recognized an independent claim for breach of Section 11, based on Chicago Bancorp's refusal to cure or repurchase loans for which CMI provided notice of defect and demanded cure.[5] *Chicago Bancorp I*, 808 F.3d at 749.

If the breach at issue in this case were truly the underlying sale of the defective loan, as Chicago Bancorp asserts, the Court or a jury would have to determine whether each loan was in fact defective under the terms of the Agreement. But Section 11 "contract[s] away" this judicial review and creates a new breach, based on Chicago Bancorp's failure to cure or repurchase a loan that CMI has, in its sole and exclusive discretion, determined is defective. *See Chicago Bancorp I*, 808 F.3d at 751. The New

---

[5] Chicago Bancorp did not raise a statute-of-limitations defense in that case.

York cases cited by Chicago Bancorp do not contain such a provision, and Chicago Bancorp has not cited any other authority persuading the Court that the statute of limitations accrued upon the sale of the loans in this case.  As such, the Court finds that CMI's repurchase claims accrued upon Chicago Bancorp's failure, after notification and an opportunity to cure, to cure or repurchase the defective loans.  Because it is undisputed that CMI provided Chicago Bancorp notice and an opportunity to cure 37 of the loans at issue, that Chicago Bancorp failed to cure or repurchase these loans, and that CMI filed suit less than five years later, the Court finds that CMI's claim for repurchase of these loans is timely as a matter of law.

### iii.　__Bad Faith__

With respect to Chicago Bancorp's remaining arguments that CMI exercised its loan defectiveness determinations in bad faith, the Eighth Circuit has already rejected nearly identical arguments in *Chicago Bancorp I*.  In that lawsuit, as here, Chicago Bancorp "challenge[d] the accuracy, materiality, and good faith of CMI's loan-defectiveness determinations,"  and argued that CMI was negligent in its own underwriting of the loans and in its handling of the underlying properties.  *Chicago Bancorp I*, 808 F.3d at 752-54.  The Eighth Circuit refused to inquire into such loan-by-loan challenges, as a matter of law, because to do so would "contradict the unambiguous contract language" providing CMI "sole and exclusive discretion" to determine whether a loan was defective so as to require cure or repurchase.  *Id.*  The Eighth Circuit noted that Chicago Bancorp "willingly agreed to place itself in this situation by granting CMI sole and exclusive discretion to determine the defectiveness of any loan purchased from

Bancorp—the very determinations that it now seeks to challenge." *Id.* at 753. Here, too, Chicago Bancorp's bad-faith arguments fail as a matter of law. Therefore, the Court will grant CMI's motion for summary judgment on Count I as to all but the 10 loans noted above.

Because the Court has rejected Chicago Bancop's bad-faith defense as a matter of law, CMI's motion to exclude the expert report and testimony of Deitch in support of this defense is moot.[6]

### iv. **Damages**

In *Chicago Bancorp I*, the Eighth Circuit also affirmed CMI's damages using the Repurchase Price formula stated in the Agreement and the CMI Manual, as that formula was "explicitly bargained for and agreed to" by the parties. *Id.* at 754. Chicago Bancorp has not argued in this case that CMI's calculations under the Repurchase Price formula are erroneous. Therefore, the Court will award CMI the Repurchase Price for all but the 10 loans noted above.[7] This amount totals $7,060,657.15.

---

[6] Indeed, the very defense for which Deitch has offered an opinion—regarding whether CMI in bad faith claimed that borrower income misrepresentations rendered certain so-called "stated income" loans defective—was rejected by the Eighth Circuit as a matter of law in *Chicago Bancorp I* as an improper inquiry into the validity of CMI's defectiveness determination. *Chicago Bancorp I*, 808 F.3d at 752.

[7] The Repurchase Price for each of the 10 loans is as follows: Alvarez: $186,337.20; Bastos: $512,139.62; Capsay: $163,528.44; Fox: $83,776.57; Groetsch: $614,574.91; Gubenko: $581,300.93; Korpan: $46,099.99; Misquez: $60,917.06; Navarro: $53,501.15; and Teneyck: $64,281.79 (totaling $2,366,457.66). (Doc. No. 301-1 at 41-54.) Therefore, the Court will deduct $2,366,457.66 from the $9,427,114.81 in total damages requested by CMI on Count I.

## Count II (Breach of Contract for Failure to Notify of Plans to Dissolve)

The Court will deny Chicago Bancorp's motion for summary judgment on Count II. CMI has presented material questions of fact regarding whether Chicago Bancorp breached Section 2 of the Agreement by failing to notify CMI that it was likely to incur a material, adverse change in its financial condition, and by failing to notify CMI of its change in ownership or management; and whether CMI was damaged as a result. Chicago Bancorp has cited no authority for its proposition that informally notifying CMI employees, at a social gathering, of its plans to go out of business satisfied the formal notice requirements of the Agreement. Rather, Missouri enforces contractual notice requirements strictly. *See Baker v. Missouri Nat. Life Ins. Co.*, 372 S.W.2d 147, 152 (Mo. Ct. App. 1963) (holding that "[t]he nature of notice required by a contract depends upon the provisions of that contract," such that "when the contract calls for notice in writing, notice in the course of a telephone conversation is insufficient to satisfy the contractual requirement"). As to Chicago Bancorp's alternative argument that CMI suffered no damage because CMI was able to recover on other loans in *Chicago Bancorp I* and because CMI's repurchase claim in this lawsuit is time-barred, the Court agrees with CMI that its recovery in *Chicago Bancorp I* is irrelevant to its damages theory in this case and that, as discussed above, CMI's repurchase claim in this lawsuit is timely.

## Count III (Fraudulent Transfer)

As Chicago Bancorp's only argument in support of request for summary judgment on Count III is the statute-of-limitations defense rejected above, the Court will deny Chicago Bancorp's motion for summary judgment on Count III.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiff CitiMortgage, Inc.'s motion for summary judgment on Count I of its Third Amended Complaint against Defendant Chicago Bancorp, Inc. is **GRANTED in part**, with respect to all loans except the Alvarez, Bastos, Capsay, Fox, Groetsch, Gubenko, Korpan, Misquez, Navarro, and Teneyck loans.  (Doc. No. 235.)

**IT IS FURTHER ORDERED** that Defendant Chicago Bancorp's motion for summary judgment on Counts I, II, and III of Plaintiff's Third Amended Complaint is **DENIED**.  (Doc. No. 236.)

**IT IS FURTHER ORDERED** that Plaintiff CitiMortgage, Inc.'s motion to exclude the expert report and testimony of James Deitch is **DENIED as moot**.  (Doc. No. 151.)


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 16th day of June, 2016.