UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14CV01278 AGF |
| | ) | |
| CHICAGO BANCORP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff CitiMortgage, Inc.'s ("CMI") motion (Doc. No. 324) for reconsideration and Defendant Chicago Bancorp, Inc.'s ("Chicago Bancorp") motion (Doc. No. 329) for clarification. Both motions relate to the Court's June 16, 2016 Memorandum and Order ("Memorandum and Order") granting in part and denying in part CMI's motion for summary judgment on Count I of the Third Amended Complaint. In Count I, CMI claimed that Chicago Bancorp breached the parties' contract for the sale of residential mortgage loans by failing to cure or repurchase 47 allegedly defective loans. The Court granted CMI's motion with respect to all but 10 of the loans. With respect to these 10 loans, the Court found that it was not clear from the record that CMI had provided Chicago Bancorp with the contractually-required opportunity to cure before demanding repurchase.[1]

---

[1] Chicago Bancorp admitted that it received an opportunity to cure the remaining 37 loans.

CMI seeks reconsideration of the Memorandum and Order with respect to the 10 loans, based on an amendment to the parties' contract that neither party mentioned in the summary judgment briefing. Chicago Bancorp seeks to clarify the portion of the Memorandum and Order granting summary judgment with respect to the other 37 loans, to direct that "upon payment by Chicago Bancorp of the Repurchase Price for a loan, CMI is required to transfer to Chicago Bancorp or its designee all of CMI's right, title and interest in and to each loan for which the Repurchase Price is paid." (Doc. No. 329 at 1.) After fully reviewing the record and the parties' arguments, the Court will grant both motions.

## BACKGROUND

The facts are set out in the Court's Memorandum and Order and shall not be recounted here. As relevant to this motion, Section 11 of the parties' contract (the "Agreement"), titled "CURE OR REPURCHASE," provided, in relevant part:

> If CMI, in its sole and exclusive discretion, determines that any Loan purchased pursuant to this Agreement [is defective in any of several enumerated ways],
>
> [Chicago Bancorp] will, upon notification by CMI, correct or cure such defect within the time prescribed by CMI to the full and complete satisfaction of CMI. If, after receiving such notice from CMI, is unable to correct or cure such defect within the prescribed time, [Chicago Bancorp] shall, at CMI's sole discretion, either (i) repurchase such defective Loan from CMI at the price required by CMI ("Repurchase Price") or (ii) agree to such other remedies (including but not limited to additional indemnification and/or refund of a portion of the Loan purchase price) as CMI may deem appropriate.
>
> If CMI requests a repurchase of a defective Loan, [Chicago Bancorp] shall, within ten (10) business days of [Chicago Bancorp]'s receipt of such repurchase request, pay to CMI the Repurchase Price . . . .

> If such defective Loan is owned by CMI at the time of repurchase by [Chicago Bancorp], CMI shall, upon receipt of the Repurchase Price, release to [Chicago Bancorp] the related mortgage file and shall execute and deliver such instruments of transfer or assignment, in each case without recourse or warranty, as shall be necessary to vest in [Chicago Bancorp] or its designee title to the repurchased Loan.

(Doc. No. 253-3 at 6.)

With respect to 10 of the 47 loans at issue in Count I, the first notification Chicago Bancorp received from CMI regarding a defect was a letter titled "Initial Repurchase Letter," which provided notice of the defect and demanded repurchase but did not prescribe a time for Chicago Bancorp to respond, except to confirm a repurchase date within 30 days.[2] Upon receiving no timely response from Chicago Bancorp, CMI followed up with a letter titled "Final Repurchase Letter," which stated that CMI had not received a response from Chicago Bancorp, that repurchase was now required, and that failure to confirm repurchase on or before 30 days from the date of the letter would result in CMI pursuing its options for breach of the Agreement. Chicago Bancorp did not respond to any of these letters, did not cure the defects in any of the loans, and did not repurchase any of the loans.

The Court denied CMI's motion for summary judgment with respect to the 10 loans noted above. In its summary judgment motion, CMI asserted that its Initial Repurchase Letters regarding these 10 loans impliedly afforded Chicago Bancorp an

---

[2] By contrast, with respect to the other 37 loans for which Chicago Bancorp admitted that it received an opportunity to cure, CMI first sent a "Citing Notification Letter" explicitly providing Chicago Bancorp the "opportunity to investigate the loan discrepancies" and specifying a period of 30 days within which Chicago Bancorp could provide a written response with any supporting documentation.

opportunity to cure the defects. But the Court found that the letters did not prescribe a time for such cure, and CMI had not identified any other place in which it prescribed a time for cure as required by Section 11. On such facts, the Court could not say as a matter of law that Chicago Bancorp's repurchase obligation was triggered with respect to the 10 loans.

In its motion for reconsideration, CMI argues that Section 11 of the Agreement was amended by an addendum, and that the amendment adds the following provision to Section 11, which CMI asserts applies to the 10 loans at issue:

> [Chicago Bancorp] expressly agrees it shall underwrite each Loan in conformity with the applicable underwriting criteria of CMI. If an audit by CMI on any Loan reveals that it was underwritten in violation of the applicable CMI underwriting criteria, [Chicago Bancorp] will, not later than thirty (30) days after receipt of written notice from CMI, repurchase the Loan at the Repurchase Price or provide CMI with written notice as to why [Chicago Bancorp] believes such underwriting criteria was not violated. If, after reviewing [Chicago Bancorp]'s written evidence, CMI, in its sole and independent discretion, determines the Loan was not originated in accordance with the applicable underwriting criteria, [Chicago Bancorp] will, not later than thirty (30) days after receiving further written notice from CMI, repurchase the Loan at the Repurchase Price specified in the Agreement, Manual, and or/applicable Bulletins

(Doc. No. 324 at 5.) Nearly identical language is also included in a manual expressly incorporated into the Agreement. Although the addendum and manual were included in the thousands of pages of exhibits attached to the parties' summary judgment briefs, neither party mentioned, let alone discussed, this amendment to Section 11 in their summary judgment briefs.

CMI argues that, because this amendment expressly sets forth both Chicago Bancorp's obligation to respond or repurchase, and the prescribed time period for doing

-4-

so, CMI's Initial Repurchase Letters for the 10 loans were sufficient as a matter of law to trigger Chicago Bancorp's obligation to respond or repurchase these loans within 30 days (and failing that, to repurchase the loans within 30 days after receiving further written notice from CMI). CMI cites *Gray v. Bicknell*, 86 F.3d 1472 (8th Cir. 1996), in support of its argument.

Chicago Bancorp does not dispute that the 10 loans at issue were subject to the amendment to Section 11. But Chicago Bancorp argues that CMI was also required to specify the duration of the response period in the written notice it sent to Chicago Bancorp. Because the Initial Repurchase Letters did not set forth this period, Chicago Bancorp argues that its repurchase obligation was never triggered as to these loans.

Chicago Bancorp also separately moves for clarification of the Memorandum and Order, to reflect that, with respect to the loans for which the Court has granted summary judgment in favor of CMI, the Court specify that "upon payment by Chicago Bancorp of the Repurchase Price for a loan, CMI is required to transfer to Chicago Bancorp or its designee all of CMI's right, title and interest in and to each loan for which the Repurchase Price is paid." (Doc. No. 329 at 1.)

CMI does not oppose Chicago Bancorp's motion for clarification. CMI states that it is prepared, upon Chicago Bancorp's payment of the Repurchase Price, to transfer to Chicago Bancorp any interest it has in any of the loans in this case which it owns.

## DISCUSSION

A "district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472

F.3d 1009, 1017 (8th Cir. 2007); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims[.]"). District courts have substantial discretion in ruling on motions for reconsideration. However, in general, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (citation omitted).

The Court finds that reconsideration is warranted here. As the Court held in its Memorandum and Order, under Missouri law, "[t]he nature of notice required by a contract depends upon the provisions of that contract." *Baker v. Mo. Nat'l Life Ins. Co.*, 372 S.W.2d 147, 152 (Mo. Ct. App. 1963). In the case relied upon by CMI, *Gray v. Bicknell*, 86 F.3d 1472 (8th Cir. 1996), a repurchase provision in the parties' stock purchase agreement provided that the buyer shall promptly "give detailed written notice" to the seller of "any event which would cause or constitute a breach" and that the seller "shall, for a period of twenty (20) days after his receipt of the Breach Notice have the opportunity to cure the existing breach" before being required to repurchase. 86 F.3d at 1479. The seller argued that the buyer's notice was insufficient to trigger repurchase under the contract because it did not state that it was a breach notice and because it demanded cure within eight days, rather than the contractual period of 20 days. *Id.* The Eighth Circuit, applying Missouri law, found that the letter satisfied the contract's criteria for notice because the contract did not require the notice to be labeled a breach notice or to prescribe a time for cure; rather, the contract itself set forth the cure obligation and

deadline, and required only that the notice set forth the event constituting the breach, which the notice did in that case. *Id.*

Here, Section 11 as originally drafted set forth Chicago Bancorp's obligation to cure or repurchase a loan upon notification of a defect and "within the time prescribed by CMI." Contrary to Chicago Bancorp's assertion, Section 11 (both originally and as amended) did not require CMI to prescribe the cure period within the notice itself. The Court only looked to the notice in its Memorandum and Order because CMI had not, at that time, identified any other place in which it prescribed a time for cure or response.

But CMI does so now, in its motion for reconsideration, by pointing to the amendment to Section 11. The amendment sets forth the Chicago Bancorp's obligation to respond to a written notice of an underwriting defect or to repurchase the defective loan, *and* the deadline for doing so (30 days after receipt of written notice). This amendment, together with the notice of defect set forth in the Initial Repurchase Letters, triggered Chicago Bancorp's obligation to respond or repurchase the 10 loans within 30 days (and failing that, to repurchase those loans within 30 days after receiving further written notice). *See Gray*, 86 F.3d at 1479. Because Chicago Bancorp undisputedly failed to do so, the Court will reconsider its Memorandum and Order and will grant CMI's motion for summary judgment on Count I in full. As stated in the Memorandum and Order, the undisputed Repurchase Price for all 47 loans at issue in Count I is $9,427,114.81.

The Court will also grant Chicago Bancorp's unopposed motion for clarification. At the time of the Memorandum and Order, the Court had not yet entered judgment in

CMI's favor on Count I. But now that it will do so, the Court will also order that, in accordance with Section 11 of the Agreement, if any of the loans at issue is owned by CMI at the time of repurchase by Chicago Bancorp, CMI shall, upon receipt of the Repurchase Price, release to Chicago Bancorp or its designee CMI's interest in such loan.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiff CitiMortgage, Inc.'s motion for reconsideration is **GRANTED**. (Doc. No. 324.) The portion of the Court's June 16, 2016 Memorandum and Order (Doc. No. 323) denying Plaintiff's motion for summary judgment on Count I with respect to the Alvarez, Bastos, Capsay, Fox, Groetsch, Gubenko, Korpan, Misquez, Navarro, and Teneyck loans is vacated.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment on Count I is **GRANTED** in full. (Doc. No. 235.)

**IT IS FURTHER ORDERED** that Defendant Chicago Bancorp, Inc.'s motion for clarification is **GRANTED**. (Doc. No. 325.) The Court's June 16, 2016 Memorandum and Order (Doc. No. 323) is amended to reflect that, in accordance with Section 11 of the parties' contract, if any of the loans at issue is owned by Plaintiff at the time of repurchase by Defendant Chicago Bancorp, Inc., Plaintiff shall, upon receipt of the Repurchase Price, release to Chicago Bancorp, Inc. or its designee Plaintiff's interest in such loan.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of July, 2016.